St. Louis, Iron Mountain & Southern Railway Company *v.* Vaughan.

Opinion delivered February 28, 1916.

Railroads—arrest of intoxicated passenger.—Where a railway conductor, or other trainman, acting in good faith, and without negligence, under the *bona fide* belief that a passenger is intoxicated, calls a policeman and has the passenger arrested, the railway company will not be liable in damages, although the passenger was not in fact intoxicated.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*E. B. Kinsworthy* and *W. G. Riddick,* for appellant.

It was error to give the 5th instruction for the plaintiff. It is directly opposed to the law as declared by this court. 95 Ark. 506; 105 *Id.* 623. This error was not cured by giving instruction No. 4, for defendant which correctly states the law. These instructions are conflicting and this court can not say which the jury followed in arriving at their verdict.

*Robt. L. Rogers,* for appellee.

The two instructions do not conflict in any sense, but taken separately or together give the jury the opportunity of judging whether defendant's agents and servants acted with ordinary care in removing or endeavoring to ascertain whether plaintiff was under the influence of intoxicating liquors. 97 Ark. 28; 95 *Id.* 510; 99 *Id.* 233; 119 Ark. 28.

McCulloch, C. J. This is an action instituted by the plaintiff, Louis Vaughan, against the St. Louis, Iron

Mountain & Southern Railway Company to recover damages alleged to have been sustained by reason of the misconduct of servants of the defendant in wrongfully causing the plaintiff to be arrested by a policeman and ejected from a train at Little Rock.

The plaintiff had been working at Argenta and boarded one of defendant's passenger trains at the Union Station in Little Rock about 11:30 o'clock one night, with the intention of going to Jacksonville, a station north of Little Rock. He purchased a ticket from Little, Rock to Jacksonville, and, in company with another man with whom he had been associated for several hours, boarded the train, which was delayed about an hour and a half in leaving the station on account of waiting for a theatrical troupe to take passage. Plaintiff took a seat in one of the coaches, and, being tired and sleepy on account of having worked during the two nights previous, he went to sleep in the seat. His companion, who sat a short distance away, was to some extent intoxicated and vomited on the heating pipes. When the auditor came through the coach to take up the tickets, before the train was ready to start, he found the plaintiff asleep in his seat with his head hanging out of the window, and also noticed the fact that Peeler, the other man, had been vomiting. He aroused the plaintiff and took up his ticket and punched it. He reported the circumstance to the other trainmen and a policeman was called to arrest the plaintiff and take him from the train. The policeman who patrolled the Union Station was called and went into the coach, arrested the plaintiff, and took him off the train. About the time, or just before the policeman came, Peeler left the coach and was not arrested. Plaintiff was asleep in his seat when the policeman came up, and he testified that he was roughly handled by the policeman and that some of the trainmen spoke roughly to him at the time, thus giving encouragement to the policeman. When plaintiff was aroused and was about to be taken from the train, he demanded his ticket from the auditor, who gave it up to him, but as it had been punched the

ticket agent in the office refused to cash it when plaintiff was carried to the ticket window by the policeman for that purpose.

The policeman testified that plaintiff had the appearance at first of being intoxicated, but after he carried him out to the ticket window and into a better light he discovered that plaintiff was not in fact intoxicated, and he carried him back to the platform and told the conductor that the plaintiff was not drunk and that they had better take him and carry him to his destination. Plaintiff was then allowed to board the train and without further interference to travel to his destination.

The plaintiff testified that he was not in any degree toxicated, but that he had drunk two "thin beers" during the evening.

Testimony was introduced by the defendant to show that the plaintiff had taken more intoxicants than he stated he had in his testimony, and that he had told a companion that evening that he had been on a "booze" all day, meaning that he had been drunk. That testimony tended to show that the plaintiff while on the train at the time he was arrested had the appearance of being intoxicated, and there was enough to justify the jury in finding that the trainmen acted in good faith in causing plaintiff's arrest. The jury returned a verdict in plaintiff's favor and an appeal has been prosecuted to this court by the defendant.

The principal ground urged for a reversal is that the court erred in giving the following instruction:

"5. No one has the right to deprive another of his personal liberty without just or legal cause, and if the defendant's agents or employees arrested, or caused to be arrested, the plaintiff, and detained him, while he was a passenger on its train, unless the plaintiff was committing or had committed, some act that under the law would authorize his arrest, the defendant would be liable for said false arrest and imprisonment, regardless of the time said plaintiff was detained by said arrest and imprisonment."

It is plain that this instruction is in conflict with the law applicable to the case as heretofore announced by this court. In *St. Louis, I. M. & S. Ry. Co.* v. *Hudson,* 95 Ark. 506, we held that under the statute which authorizes conductors to act in the capacity of peace officers on their train, and to arrest all persons found on the train to be in an intoxicated condition, that where a person is arrested by a conductor on a railway train it may be shown that the conductor acted in good faith and honestly believed, "after the exercise of ordinary care under the circumstances of the arrest, that the person arrested was drunk." It was said further in the opinion that "the company would not be liable for the arrest where the person arrested was sober, if the conductor, exercising ordinary care, honestly believed, under all the facts and circumstances, that the party arrested was drunk, and made the arrest and the ejection without any unnecessary force."

The same rule was announced in the later case of *St. Louis, I. M. & S. Ry. Co.* v. *Waters,* 105 Ark. 619. In each of those cases the arrest was made by a conductor under the statute which constituted him an officer for that purpose, but there is no reason for holding the law to be otherwise in a case where the conductor or other trainmen calls a policeman to make the arrest. After all it is a question of good faith and freedom from negligence which tests the question of the company's liability. Instruction No. 5 is wrong because it omits that question from the consideration and tells the jury in unmistakable language that the arrest was unlawful, "unless the plaintiff was commiting or had committed some act that under the law would authorize his arrest," and that the company would be liable for such arrest. A specific objection was made to the instruction on this ground and the court should have amended the instruction so as to cure the defect.

The court gave a correct instruction on the subject, at the instance of the defendant, which reads as follows:

4. "You are instructed that in removing from their trains persons believed by them to be under the influence of liquor, the defendant's servants are only required to use ordinary care in determining whether or not persons so removed are under the influence of intoxicating liquor, and if in the exercise of such care, defendant's servants reasonably believed that the person removed is intoxicated, or under the influence of intoxicating liquors, and use no more force than is reasonably necessary under the circumstances in removing such persons from the train, then the defendant can not be held liable to such person for his removal, even though he was sober."

It is insisted that the two instructions can be read together in harmony, and that the one cures the apparent defect or omission of the other. Instruction No. 5 is inherently wrong, we think, and it is not cured by the other instruction. The two instructions are conflicting and were calculated to mislead the jury as to the law applicable to the case. That being true, we are unable to say which one of the instructions the jury followed in arriving at their verdict.

The judgment must therefore be reversed, and the cause is remanded for a new trial.