Memphis, Dallas & Gulf Railroad Company *v.* Trussell.

### Opinion delivered March 6, 1916.

1. Carriers—drunken passenger—duty of conductor.—A railway conductor may and should arrest a drunken passenger when, in the exercise of ordinary care, he honestly believes, under all the facts and circumstances, that the passenger is drunk.

2. Carriers—duty to protect passengers—injury and annoyance.— A carrier of passengers is under a duty to protect its passengers from injury and annoyance from other passengers.

3. Carriers—annoyance to passenger—damages.—Plaintiff, a passenger on defendant's train was assaulted and insulted and otherwise annoyed by a drunken fellow-passenger. *Held,* an instruction on the question of damages, was not improper, as follows: "If you find for the plaintiff you will assess her damages at such sum as would fairly and reasonably compensate her for any injury she may have sustained by reason of the assaults and insults, if any, she received from the fellow-passenger on the train."

Appeal from Garland Circuit Court;. *Jefferson T. Cowling,* Judge on exchange; affirmed.

*J. W. Bishop* and *J. G. Sain,* for appellant.

1. There is no sufficient proof of the fact that Hall was intoxicated, or that the conductor or brakeman knew it or discovered it, before the assault, and the instructions

given for plaintiff go too far in defining the duty of the conductor to act before there was evidenced some of the outward signs of drunkenness. Conductors can not act arbitrarily and without due care. 95 Ark. 624; *Ib.* 506; 105 *Id.* 624.

2. The damages were too remote and the alleged injury or assault not the proximate cause of any omission of duty owing to the plaintiff by defendant. 14 Am. Rep. 190. The company is not responsible for the results of a sudden, unlooked for and violent attack committed by a fellow passenger. 14 Am. Rep. 190; 8 Am. & Eng. Ann. cases, 590; 59 L. R. A. 104.

3. There was no physical injury and no recovery can be had for mental suffering and humiliation, where there was no willful, wanton or malicious wrong done. 70 Ark. 136; 91 Am. St. 79; 89 Ark. 187; 84 *Id.* 42; *C., R. I. & P. Ry.* v. *Mizzell,* 118 Ark. 153.

4. The verdict was by lot. 35 Ark. 113; 66 *Id.* 264; 91 *Id.* 502. It is excessive.

*M. S. Cobb,* for appellee.

1. The jury was properly instructed. It was the duty of the servants of the company to use reasonable care in protecting appellee from insults, annoyances, abuse and insults by a drunken fellow passenger, and to use reasonable care in preventing drunken passengers from boarding its train. Act No. 44 Acts 1909; 3 Thompson on Negl. § 3085-7; 63 L. R. A. 635; 91 Am. Dec. 224; 93 *Id.* 99; 99 Ark. 346. The instructions really were not as strong as should have been given.

2. Appellee was assaulted and appellants servants could have prevented it by the exercise of reasonable care. There was physical injury. 97 Ark. 24; *C., R. I. & P. Ry. Co.* v. *Allison,* 120 Ark. 54; 84 Ark. 42. The weight of the finger laid on in anger, or any frivolous assault will let in damages for mental anguish. The verdict is not excessive; but really too small.

SMITH, J. This is an action for damages for alleged "annoyance, fright, humiliation, and nervous shock

suffered at the hands of one Barney Hall, a fellow passenger,'' of appellee aboard one of appellant's trains.

Appellee was a passenger en route from Hot Springs to Pearcy and, according to the evidence offered in her behalf, was insulted and annoyed by a fellow passenger. One, Barney Hall, was permitted to board the train at Hot Springs in a drunken condition, after so deporting himself at the station as to make it apparent that he was drunk. Appellee was a school teacher and was returning to her home unattended, and a short distance out of Hot Springs the said Hall came into the coach where she was riding and sat down on the arm of the seat just across the aisle from where she was sitting. He placed his feet upon the arm of the seat occupied by appellee and, being unable by this means to attract her attention, he leaned across the aisle, placed his hands upon the arm of the seat occupied by appellee and struck the arm of the seat several times in a further attempt to attract her attention. Failing in this except to cause appellee to change her position in the seat he arose and, leaning across the seat, grabbed appellee by the arm in a rude and insulting manner. The proof further is that Hall came staggering into the coach in which appellee was riding; that his shirt tail was out; that he was in his shirt sleeves, and had in the bosom of his shirt a quart bottle of whisky. Hall was unacquainted with appellee and, when he touched her on the arm, she proceeded to strike him over the head with her umbrella and broke it with the third blow, after which appellee left the car. The conductor came into the car and asked appellee if anyone had annoyed her, and was told of the incident which had just occurred, whereupon the conductor advised her to get off the train at Hemp Wallace—one of the stations on appellant's road, and have Hall arrested. When the conductor left the car Hall came to the front door of the car and winked and blinked and laughed and patted on the door and kissed the door facing and blew kisses at appellee. Thereafter Hall came back into the coach a second time, when the brakeman came in and

took him out, but he came in again and stood down in the front of the coach, when the conductor came in again and took him out. Appellee testified that Hall came to the door twice and went through his winking maneuvers. Other witnesses testified that Hall was visibly drunk, and that this fact was apparent before he got on the train. When Hall's station was reached he was assisted off the train, and when released, fell to the ground.

Hall testified as a witness in appellant's behalf and admitted that he had been drinking, but denied that he was drunk. He remembered that appellee had struck him with her umbrella, but did not know why she had done so, as he did not remember having done anything to provoke the assault on him.

In behalf of the appellant the conductor testified that he saw Hall and took up his ticket, but did not observe that he was drunk, and that when he heard of the trouble which had occurred on the train he went into appellee's coach, but did not see anyone who appeared to be drunk; when he asked appellee if she had had any trouble and, upon receiving an affirmative reply he asked her what she wanted done about it, and she replied, "He will be all right, I think; I jammed his head." And the conductor further testified that he thereupon put a man in charge of Hall to see that he did not cause any further trouble. The conductor and other employees in charge of the train denied knowing that Hall was drunk before he entered the train.

There was a verdict and judgment in appellee's favor for $250, from which this appeal has been duly prosecuted.

Instructions given at the request of appellee told the jury that it was appellant's duty to arrest any person found in an intoxicated condition on the train, and also to use reasonable care to prevent intoxicated persons from boarding its trains, and, further, that, if appellant's servants in charge of the train knew or, in the exercise of reasonable care, should have known that Hall was drunk, and liable to insult or annoy other passengers

on the train, he should not have been permitted to board the train, and that if they became aware of his condition after he had become a passenger, it was their duty to exercise reasonable care to prevent him from annoying appellee and other passengers.

This idea was embraced and enlarged upon in several instructions given at appellee's request, to all of which exceptions were duly saved.

It is urged that there was no sufficient proof of the fact that Hall was in the condition defined prior to the time of the alleged assault, and that the instructions go too far in requiring the conductor to act before there are outward signs manifesting the intoxication, and that the instructions imposed an unreasonable burden on the servants of the carrier engaged in the operation of its trains.

Act No. 44 of the Acts of 1909, page 99, constitutes all conductors on trains running in this State peace officers on their respective trains for the purpose of arresting any person found to be drunk, and charges them with the duty of delivering such drunken person to the nearest peace officer with the names of two witnesses who are not railroad employees.

(1)    In the recent case of *St., L. I. M. & S. Ry. Co.* v. *Vaughan,* 122 Ark. 436, the cases on this subject are reviewed, and it was there stated that the conductor might arrest, and should arrest, a drunken passenger when, in the exercise of ordinary care, he honestly believed, under all the facts and circumstances, that the passenger was drunk.

It is conceded that this act gave the conductor authority to arrest Hall and that he should have done so, if he had known of his drunken condition; but it is insisted that, under the proof, the conductor was under no duty to make the arrest, and that the instructions referred to were erroneous in imposing upon him a higher duty than the law exacts.

(2)    The duty of the carrier to protect its passengers from annoyance and injury is discussed in an almost

infinite number of cases and, among these, is our own case of *Mayfield* v. *St. L., I. M. & S. Ry. Co.*, 97 Ark. 24, also reported in 32 L. R. A. (N. S.) 529. A late case on the subject is that of *C., R. I. & Pac. Ry.* v. *Brown,* 111 Ark. 288. A number of the leading cases on the subject are collected in the case notes to sections 606-608 of 4 R. C. L.

We do not think the instructions complained of imposed a higher duty or degree of care than the law requires, and we think the jury was warranted, under the evidence, in finding that appellant failed in the performance of its duty to appellee, and that if appellant's servants in charge of the train did not know, they should have known, that Hall was drunk, and that, if he was not arrested and put off the train as provided by the act above cited, he would require special observation if he was allowed to remain on the train.

(3) Over the objection and exception of appellant the court instructed the jury as follows:

"If you find for the plaintiff you will assess her damages at such sum as would fairly and reasonably compensate her for any injury she may have sustained by reason of the assaults and insults, if any, she received from the fellow passenger on the train."

It is insisted that as a result of giving this instruction the jury awarded excessive damages, inasmuch as there is no proof of physical injury. But we think the instruction was not an improper one, and we are unable to say that the damages are excessive. Appellee was assaulted and flagrantly insulted, and there was an exasperating renewal of the incident, from which she necessarily suffered humiliation and mental anguish. This suffering resulted from a breach of the carrier's duty to carry her safely and to afford the protection which was due her.

Finding no prejudicial error the judgment is affirmed.