HINES v. RICE.

Opinion delivered February 9, 1920.

1. CARRIERS—ASSAULT ON PASSENGER—LAW OF PLACE OF ASSAULT.—
Where a drunken fellow passenger assaulted plaintiff in Missouri, the laws of that State must govern in determining whether there is any liability against the carrier.

2. CARRIERS—INJURY TO PASSENGER—LIABILITY.—A carrier is liable to a passenger for injuries inflicted by any cause if it could have been prevented by the exercise of the highest degree of care usually exercised by very cautious persons engaged in similar business.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—The Supreme Court must give the testimony its strongest probative force in favor of the verdict, which will not be set aside when supported by substantial evidence.

4. CARRIERS—ASSAULT ON PASSENGER—CONTRIBUTORY NEGLIGENCE.—
A woman passenger was not guilty of contributory negligence when she took a seat beside a man who was drunk and asleep, there being no other seat vacant and the conductor having made no effort to secure her another seat.

5. CARRIERS—PERSONAL INJURIES OF PASSENGER—INSTRUCTION.—In an action for injuries to a passenger assaulted by a drunken fellow passenger, an instruction on the measure of damages that if the jury found for the plaintiff they should assess damages at such sum as would fairly and reasonably compensate her for any injuries sustained by reason of the other passenger's insults and assaults, though too general, was not open to a general objection.

6.   CARRIERS—PERSONAL INJURIES—EXCESSIVE DAMAGES.—Where a female passenger was insulted and assaulted by a drunken fellow passenger who alleged she had his ticket and who laid hands on her, a verdict of $1,000 was not excessive where she received a fright and suffered a nervous collapse and other physical injuries.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; affirmed.

*W. F. Evans* and *Warner, Hardin & Warner,* for appellant.

1.   The evidence is not sufficient to sustain the verdict. The defendant was not guilty of negligence. The uncontradicted testimony shows that the sudden and unanticipated assault could not have been foreseen by the most vigilant observation, and the unexpected conflict was repelled by the conductor promptly and successfully. No. liabilty was proved against defendant, and plaintiff failed absolutely to show the violation of any duty to her as a passenger. The measure of care and duty of the carrier is governed by the laws of Missouri, as the injury occurred in that State. 113 Ark. 265-278.

2.   A sudden and unexpected attack or assault by one passenger upon another does not render the carrier liable unless it is shown that its employees knew, or could have known, in time to prevent the assault from the wrongdoer's acts and conduct, that he was contemplating injury to his fellow passengers. 204 S. W. 508; 36 *Id.* 485; 14 Am. Rep. 190; 66 Atl. 1006; 26 Am. Rep. 68; 66 N. Y. 643; 10 C. J. 905; 3 Thompson on Neg., p. 550, § 3087, p. 545; *Ib.,* § 3093; 75 Hun. 548; 90 S. E. 221; 29 N. W. 18; 87 Mo. 74; 198 Mo. 664; 96 S. W. 1017; 7 L. R. A. (N. S.) 231; 8 Ann. Cas. 584; 84 Ark. 193; 118 *Id.* 396; 70 *Id.* 136; 4 R. C. L. 1186; 111 Ark. 288; 131 *Id.* 341; 75 *Id.* 242.

2.   The court erred in instructing the jury as requested by plaintiff. 70 Ark. *Ry. Co.* v. *Wilson;* 10 C. J. 905; 17 *Id.* 1061, § 368; 105 Ark. 210.

3.   The court erred in refusing the defendant's instructions. 204 S. W. 508; 96 Ark. 206, 212; 131 *Id.* 356;

75 *Id.* 242; 32 L. R. A. (N. S.) 1209; 118 Ark. 396; 135 *Id.* 480-493.

4. The court erred in admitting testimony over defendant's objection as to the porter's acts and remarks. 84 Ark. 42; 118 *Id.* 153; 93 N. E. 698; 70 Ark. 143. Also as to whether the conductor or other employee made any efforts to put the drunken man off the train and as to the effect of the drunken man's conduct on her health. 63 Ark. 402; 13 Okla. 563; 134 Pac. 388; 39 N. W. 884; 74 N. Y. S. 1113; 47 N. J. L. 23; 130 Ark. 546; 126 S. W. 1013.

5. The damages are excessive. 69 Ark. 402; 204 S. W. 565; 118 *Id.* 31; 120 *Id.* 54; 124 *Id.* 229.

*Duty & Duty,* for appellee.

1. The passenger was intoxicated, and the railway porter knew it and was guilty of negligence in allowing him to remain in the same car, and it was the carrier's duty to warn of danger and protect passengers. 6 Cyc. 600; 80 Ark. 158.

2. The judgment is right on this whole case, and should be affirmed, even if there were slight errors. 80 Ark. 158; 19 *Id.* 677; 87 Am. Dec. 714; 204 S. W. 511; 3 Thompson on Neg., p 545; 23 Fed. 637; 6 Cyc. 550, 551; 22 L. R. A. 250; 69 Miss. 421; 45 Ark. 368; 22 L. R. A. 250.

3. There was no error in the instructions and the verdict is sustained by the evidence. 10 C. J. 728; 116 Ark. 179; 128 Mo. 617; 25 S. W. 341; 33 Cyc. 825; 91 S. W. 989; 38 *Id.* 533; 135 Ark. 493.

4. Fright and fear are elements of damage, and appellant's testimony was competent. 25 S. W. 341. See also 89 Ark. 9; 10 C. J. 727; 96 S. W. 307; 39 Ark. 492; 93 S. W. 1120.

5. The testimony was competent, and there was no error in instructions. 94 U. S. 469; 83 Ark. 488; 118 *Id.* 569; 83 *Id.* 587; 130 *Id.* 83; 118 *Id.* 569; 95 Ark. 311; 203 S. W. 271.

The refused instructions were not the law of this case, and they were correctly refused. 115 Mo. App. 582; 38 S. W. 533; 40 Ark. 298; 135 Ark. 493; *Ib.* 480; 120 Ark. 60.

WOOD, J. Appellee, Ethel Anderson Rice, lived at Bentonville, Arkansas. She was teaching school at Anadarko, Oklahoma. She purchased her ticket from the St. Louis & San Francisco Railway Company, hereafter for convenience called appellant, to Oklahoma City, and left her home about 4 p. m. October 29, 1918, going via Rogers to Monette, Missouri, where she arrived about 8 p. m. At Monette she boarded appellant's Oklahoma City train about 11:30 p. m. She went into the chair car and through the car looking for a seat. The seats were all taken except one at the front end of the car. She returned and occupied it because there were no other vacant seats. In the chair car beside her was a large fat man who had his sleeves rolled up and vest on and was in a very unkempt condition. His face was turned toward the window, and he was sprawled out over his seat and appeared to be asleep. As she entered the chair car she asked the man standing at the end of the car for a seat in the Pullman. He stated they could not get one for her, and no one attempted to find her a seat in the chair car. A few minutes after taking the seat, the porter came through the car and made an announcement, that, on account of a wreck, passengers for Neosho should get off the train as they had to detour by way of Joplin. He asked the passengers to show their tickets, and he asked the man sitting beside her for his ticket several times, then reached over and shook him, tried to rouse him up, but got no reply from him. The porter then asked her if she had that man's ticket.

About twenty minutes after the porter went through the train and the train had started, the conductor came in the front end of the car and began taking up tickets. He took appellee's ticket and asked the man beside her for his ticket. He muttered and mumbled, but did not

answer the conductor. The conductor then shook him repeatedly and asked him for the ticket. The man answered that he had no ticket. The conductor stood there and quarreled with him about the ticket. He repeatedly asked him for his ticket. Finally, the man said, "That young lady has my ticket," referring to the appellee. The conductor said, "No, she has not your ticket; hunt the ticket up." At that time the appellee was scared and was leaning out toward the aisle trying to get out. The baggage had been piled up at the front end of the car, and the conductor was standing in the narrow place, so appellee could not get out. He stood there and wrangled a long time before the man grabbed appellee. While they were quarreling, he reached out and took hold of appellee. When he grabbed appellee, he was standing up as much as he could get from the chair he was in, but was not entirely out of his seat. He was up somewhat and over toward appellee. His hand came over the back of the seat above appellee's waist. She thought possibly from his talk that the man thought appellee had taken his ticket. The conductor then pushed him over into the window, back in the seat and let appellee out.

Appellee was badly frightened; came near fainting. Someone opened the door, and she went out into the vestibule and sat on the porter's step, where she stayed five or ten minutes when some man back in the car came and offered her his seat and took her inside. The conductor did not then or at any time offer to procure her a seat. She took the seat offered her by the gentleman about half way back on the opposite side. She saw the drunk man take a bottle out of his pocket and drink out of it. Finally he dropped the bottle on the floor of the car and broke it. He had another bottle that he went and got and drank out of that bottle. No one made any effort to put him off or take him into another car. The man stayed on the car several hours until he reached the place where he got off.

The appellee instituted this action against the appellant for damages for personal injuries. The above are

substantially the facts upon which she predicated her cause of action.

The appellant denied all the material allegations of the complaint and set up the affirmative defense of contributory negligence on the part of the appellee.

The court, over the objections of the appellant, granted certain prayers of the appellee for instructions and refused certain prayers of appellant.

The jury returned a verdict in favor of the appellee for the sum of $1,000. From a judgment in appellee's favor is this appeal.

Later we will set out and comment upon such other facts as may be necessary.

The appellant first contends that the evidence is not sufficient to sustain the verdict.

The appellee, among other allegations of negligence, alleged in her complaint that, ''the trainmen in charge of said train had carelessly, negligently, wantonly and wilfully permitted an insanely drunken man to enter said train and to remain therein and occupy the opposite seat from the plaintiff and among the other passengers.'' She further alleged that, ''the said conductor and parties as aforesaid carelessly and negligently let the drunken man remain in or near the seat occupied by the plaintiff, and permitted him to harass, annoy, and frighten the plaintiff.'' The complaint alleged that ''the drunken man proceeded to arise from his seat and take hold of the plaintiff, and proceeded to and did shake and crush her arm, which greatly pained the plaintiff and terrified her, all of which was well known and observed by said conductor and porter in charge of said train, but that they wantonly, cruelly and negligently permitted said drunken man to assault the plaintiff, when by ordinary care and diligence the same could have been prevented.'' The appellee further alleged that ''said trainmen were guilty of negligence in permitting a man whose conduct was so manifest to enter and remain in said train or passenger car, and when his condition and conduct were well known

to the conductor and other employees of the defendant in charge of said train.''

The acts of which appellee complains occurred in Missouri. Therefore the laws of that State applicable in such cases must govern in determining whether or not there is any liability against appellant. *St. L. & S. F. Ry. Co. v. Coy,* 113 Ark. 265, and cases there cited.

In *Lige* v. *Chicago, B. & Q. R. R. Co.,* 204 S. W. 508 (Mo.), the facts were substantially as follows:

A passenger who was in an intoxicated condition when he boarded the train, and who was observed by the conductor to be in such condition after he entered the train on account of his manner of acting and talking, suddenly and without cause picked up an iron wrench near a stove in the smoking car and struck a fellow passenger on the head. The assault was committed without any warning whatever or without any previous verbal altercation. The man who committed the assault was ''joshing and talking,'' but aside from this he was guilty of no improper conduct whatever, while in the train, until he committed the assault.

The Supreme Court held that the injured party had no cause of action against the railway company. In the course of the opinion, the court announced that ''the carrier is liable to a passenger for injuries inflicted by any cause if it could have been prevented by the exercise of highest degree of care usually exercised by very cautious persons engaged in similar business.''

The court quoted, with approval, from Judge Thompson's work on Negligence, volume 3, p. 544, section 3089, as follows: ''If the conduct of a railway passenger is such as to excite reasonable apprehensions that his presence will result in injury or annoyance to their passengers, it is the right and duty of the conductor to expel him without waiting for any overt act of violence.''

The court quoted the following from 10 Corpus Juris, p. 905: ''It is the duty of the carrier's employees to protect passengers from the acts or conduct of an intoxicated fellow passenger, and, where there is reason to ap-

prehend injury or annoyance from him to other passengers, they should eject him from the train or other vehicle, or require him to remain seated and behave himself; and where, by reason of the employees' negligent failure to afford such protection, a passenger is injured by an intoxicated fellow passenger, the carrier is liable. But it is not liable where there has been no reasonable opportunity to discover such passenger's condition and intent; and failure to eject a passenger merely because he is drunk, if otherwise well behaved, will not alone subject a carrier to liability for an injury caused by his acts or conduct.''

The law concerning the duty of common carriers of passengers (by .railroad) to their passengers is essentially the same in this State as in Missouri. In *Mayfield* v. *St. L., I. M. & S. Ry. Co.,* 97 Ark. 28, this court said: ''A railroad as a common carrier of passengers is bound to use extraordinary care, not only to carry its passengers safely, but also to protect them during the carriage from assault or injury from its agents in charge of the train and from others. By its contract the railroad company assumed the obligation to protect the passenger against any negligence or wilful misconduct of others on the train. The conductor has control, not only of the movements of the train, but over persons on it, and has authority to compel the observance of the rules of the company by all persons on the train. He has therefore the power under ordinary circumstances to protect them from violence or wrongful injury from others, and the law makes the company liable for an injury to a passenger resulting from a negligent failure to exercise such power.'' And in *St. L. S. W. Ry. Co.* v. *Bradley,* 99 Ark. 316, we held that where an injury to a passenger was caused by a drunken fellow passenger and the facts tended to show that the conductor knew that the fellow passenger was .drunk and giving annoyance, the railway company was liable because of the failure of its conductor to take proper steps to protect the injured passenger. *M., D. & G. Rd. Co.* v. *Trussell,* 122 Ark. 516, is to the

same effect. See, also, *St. L., I. M. & S. Ry. Co.* v. *Wilson,*
70 Ark. 136. In *St. L. & S. F. Rd. Co.* v. *Wyatt,* 84 Ark.
194, we held that, "a railroad company is not responsible
for failure to protect from assault one who was waiting at
its station intending to become a passenger on its train, if
the assault was committed so suddenly that the railroad
company could not reasonably have anticipated and pre-
vented it." The same rule is applicable to a passenger
while on the train. Thus the law applicable to cases of
this character is well settled by the decisions of the Su-
preme Court of Missouri, as well as by the decisions of
our own court to the same effect.

It could serve no useful purpose to set out and dis-
cuss in detail the separate prayers for instructions which
were granted or refused or modified and given by the
trial court. There was no misapprehension of the law
by the trial judge. His charge as a whole correctly de-
clared the law applicable to the facts of this record, and
the instructions to the jury were in conformity with the
law upon the issues here involved, as announced by the
court of last resort of Missouri.

The most difficult question for decision is whether
the testimony is legally sufficient to sustain the verdict.
According to a well settled rule we must give the testi-
mony its strongest probative force in favor of appellee.
Observing that rule, we have reached the conclusion that
the issue of negligence was one of fact for the jury to de-
termine under the evidence. The verdict in favor of ap-
pellee on the issue, having substantial evidence to sus-
tain it, will not be set aside by this court.

The case on the facts is distinguished from the case
of *Lige* v. *Chicago, B. & Q. R. R. Co., supra,* in some es-
sential particulars. Although the party who committed
the assault on Lige was intoxicated and the conductor
was apprised of that fact, yet, until the very moment of
the assault, the drunk man had not disturbed anyone and
had not given any offense to or manifested any ill will
towards Lige or anyone else. He suddenly and without
warning assaulted Lige. Here, according to the testi-

mony of the appellee, the conductor "repeatedly asked" the man beside her "for his ticket," and the man replied: "I have no ticket, that young lady has my ticket." The conductor, she says, "stood there and quarreled with him about the ticket." "He stood and wrangled there a long time before the man grabbed me." Her testimony further tends to show that, during the time of the wrangle and quarrel between the conductor and the drunk man, she was virtually imprisoned in her seat between them. The conductor was a large man and filled the aisle. The space in the front end of the car was filled with baggage so that there was no way for her to get out until the conductor stepped aside and let her out. This he did not do until she had requested him, and not until she had been assaulted by the drunk man.

The important and controlling point of distinction between this and the Lige case is that in the Lige case the assault was sudden and without warning, whereas here the jury was justified in finding otherwise. True, the conductor testified in this case that he talked with the man only about a minute, perhaps not more than four or five seconds, and that the assault upon the young lady was immediate. But the jury accepted the testimony of the appellee upon this point. The jury were warranted in finding from her testimony that the conductor, although aware of the man's drunken or "crazy" condition, and advised by his replies that he thought she had his ticket, nevertheless stood there and "quarreled" and "wrangled with him a long time" until he finally arose partly out of his seat and "grabbed" her.

Now, it seems to us, under these circumstances, it was peculiarly a question for the jury to say whether or not a man of ordinary prudence, exercising the highest degree of care consistent with the business in which he was engaged, would have permitted the appellee to remain in the awkward and embarrassing situation in which she found herself until it was too late to prevent the assault. The porter had been informed by the appellee that she did not have the man's ticket. The testimony of the

conductor tended to prove that he knew that appellee was not the traveling companion of the drunken man. She was not of his class. He was a "tough looking customer," and his conduct proved him to be such. He had accused appellee of getting his ticket, showing that in his drunken or "crazy" condition he believed that appellee had perpetrated a wrong upon him. Would a man of ordinary prudence, a conductor of a passenger train, in the exercise of ordinary care for the comfort and safety of the passengers, after blocking with his own person, the only avenue of escape, have stood in the presence of this young woman and "quarreled and wrangled a long time" with a drunken or crazy man who had accused her of taking his ticket; or would a thoughtful conductor, under such circumstances, have first endeavored to rescue the young woman from her disagreeable, not to say, dangerous, situation by clearing the way, and inviting her into another car, or to another location in the same car out of range of personal insult or assault, while he, the conductor, "had it out" with the drunken or crazy passenger?

These were questions of fact for the jury and the trial court to answer.

The facts developed here made it an issue for the jury to determine whether the conductor knew, or by the exercise of ordinary care could have known, from the conduct of the drunken passenger that an insult to, or assault upon, appellee was reasonably to be anticipated, and which in the exercise of ordinary care he could have prevented. *Woas* v. *St. Louis Trust Co.*, 198 Mo. 664; *Spohn* v. *Missouri Pacific Ry. Co.*, 87 Mo. 74.

We have examined all the other questions urged by the learned counsel for appellant in their excellent brief, and find no reversible error in the rulings of the court. There was no contributory negligence, and the court did not err in refusing to submit that issue to the jury. There was no prejudicial error in the ruling of the court upon the admission of testimony.

The instruction upon the measure of damages told the jury that if they found for the plaintiff they should assess her damages at such sums as would fairly and reasonably compensate her for any injury she may have sustained by reason of the insults and assaults, if any, she received from the drunken fellow passenger.

The appellant objected to the instruction because the elements of damage were not specified. But the appellant did not present a prayer for instruction defining the specific elements of damage for which recovery could be had by appellee if the jury should find in her favor. The instruction in the form given was not one to be approved as a precedent, still it did not contain any positive misstatement of the law. It was couched in too general terms but was not on that account fatally defective. The appellant should have requested the court to grant a prayer explaining the specific element of damage which it conceived had been overlooked, before it can complain here. *Fordyce* v. *Jackson*, 56 Ark. 594-602.

We have reached the conclusion that the issue of negligence and of appellant's liability was for the jury, and that this issue was fully and fairly presented. The jury having determined that issue in favor of the appellee, we cannot say as matter of law that the amount of the verdict was excessive. Here was an actual assault upon the person of appellee, and, as a consequence, appellee says she "was scared nearly to death," causing "physical changes in her system," which she described, and from which she had endured a "great deal of trouble and pain." She had been in good health before the injury, but since, and to the time of the trial, she was suffering from the effects of the assault. She says: "When this (her menses) comes on, I have to lie down, and am not able to stand on my feet for fifteen minutes. Have lost ten pounds, nervous condition seriously affected. This result is the effect of the assault by the drunken man." The degree of humiliation which a "refined and sensitive" young woman would experience when the violent hands of a drunken ruffian are laid upon her in the pres-

ence of other passengers depends, of course, largely upon the particular manner of the assault and insult. The jury had the circumstances, and manner of the assault before them as related and demonstrated by the appellee and appellant's conductor.

The appellee testified that the conductor said to her that "he was sorry it happened. He said he should have been killed." If indeed the conduct of the drunken man was so flagrant as thus indicated, the jury were fully warranted in finding that the assault upon appellee was well calculated to and did produce directly and proximately the fright, nervous shock, and distressful condition of health which she described.

The cases of *Kansas City, P. & G. Ry. Co.* v. *Bragg,* 69 Ark. 402, *C., R. I. & P. Ry Co.* v. *Allison,* 120 Ark. 54, and *Butler County Rd. Co.* v. *Exum,* 124 Ark. 229, are differentiated from the present case by the facts of those cases. In neither of them was there a personal injury to or assault upon the plaintiff. Here there was a personal assault upon the plaintiff, and the fright, nervous collapse and other physical injuries of which she complained were the direct and proximate result of such assault; at least the jury was warranted in so finding.

There is no reversible error. Let the judgment be affirmed.