### McMAHON v. INTERBOROUGH RAPID TRANSIT CO.

(City Court of New York, Trial Term.  May, 1908.)

CARRIERS—CARRIAGE OF PASSENGERS—DUTY OF CARRIER—PROTECTION FROM
     FELLOW PASSENGERS.

> Where a carrier fails to perform its duty in preserving order and removing dangerous and offensive persons from a car, it is liable for any injury to other passengers which might reasonably be anticipated in view of the circumstances, and where the fact of the riotous conduct of offending passengers is made known to a guard, it is his duty to avoid injury to other passengers, and he should suppress the disturbance or remove the offenders, summoning proper aid, which was at his command, and the company is liable for his failure to do so.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1125.]

Action by. Lizzie McMahon against the Interborough Rapid Transit Company for personal injuries received from fellow passengers. Judgment was for plaintiff, and defendant moved to set aside the verdict and grant a new trial. Motion denied.

House, Grossman & Vorhaus, for plaintiff.
C. A. Gardener, for defendant.

FINELITE, J. The jury rendered a verdict in favor of the plaintiff for the sum of $300. The defendant moved to set aside said ver-

dict and for a new trial, upon the ground that the verdict was contrary to law. The action is brought to recover damages for injuries sustained from an act of a fellow passenger on one of the defendant's cars on the evening of the 31st day of December, 1905. From the evidence adduced by plaintiff upon the trial it appeared that the plaintiff, a young woman, with several companions, boarded one of the defendant's cars traveling in a southerly direction; that she was seated therein, and that after said car left the Thirty-Fourth Street station several male co-passengers began to push and shove one another in a riotous and boisterous manner, indulging in horseplay and other unseemly and improper conduct; that such conduct ultimately reached the stage where they disported themselves by throwing a shoe of one of their number about the car, which struck the plaintiff in the face, without any warning to her or provocation on her part, and caused the injuries complained of. At the time plaintiff was so struck the train had about reached the Park Place station, the improper behavior having continued almost without cessation from about the time the train left the Thirty-Fourth Street station, at which latter time and while said offenders were conducting themselves as aforesaid the guard of the car in which plaintiff, her companions, and the said co-passengers were, walked through the same. The witness McGuinness at that time called his attention to the disorderly conduct of said co-passengers, requested him to quell the disturbance occasioned thereby, and warned him that there was danger of somebody being injured as the result of such rioting. In reply the guard laughed, and proceeded on his way to the rear end of the train. He made no attempt to subdue the disturbance, which continued and resulted in the act which injured plaintiff. Throughout the period mentioned the guard, an employé of the defendant, was present in the car in a position to see the entire occurrence. The plaintiff was corroborated as to this statement of facts. The evidence adduced by the defendant substantially contradicted the plaintiff's version of the affair. Its witnesses were the conductor of the train and a guard. The latter, however, was not the guard referred to by plaintiff, and who had charge of the car containing the plaintiff, her companions, and the fellow passengers mentioned. He had charge of another part of the train. The guard referred to by plaintiff was not produced at the trial.

The question of the probability of the plaintiff's story as testified to by her, its corroboration by her witness, and its contradiction by defendant's witnesses, was submitted to the jury. After due deliberation the jury found for the plaintiff for the sum mentioned. The proposition raised by the defendant on this motion is: To what extent is the defendant liable to this plaintiff for the injury sustained from the act of a fellow passenger under the facts of this case, in the light of the authorities applicable? In Koch v. Brooklyn Heights R. R., 75 App. Div. 282, 78 N. Y. Supp. 99, Jenks, J., says:

"A common carrier of passengers must exercise the utmost vigilance to maintain order and to guard its passengers from violence which reasonably might be anticipated or might be expected under all the circumstances and in view of the number and character of the passengers."

This is the rule of Putnam v. Broadway & Seventh Ave. R. R.,
55 N. Y. 108, 14 Am. Rep. 190, citing Flint v. Norwich & N. Y.
Transp. Co., 34 Conn. 554, Fed. Cas. No. 4,873, and of Carpenter
v. Boston & Albany R. R., 97 N. Y. 494, 497, 49 Am. Rep. 540. That
seems a case in point. The plaintiff and a companion became pas-
sengers upon one of the defendant's cars. They began to talk in the
German tongue, when other passengers, without any provocation,
began to insult and revile them, to take hold of plaintiff's hat, and to
hustle him. The plaintiff and his companion asked the offenders for
peace, but without success. Thereupon the companion went out to
the platform, which was separated from the interior of the car by a
glass door, and asked the conductor to interfere. The conductor an-
swered: "I can't do nothing. If I told them to stop they wouldn't
do it." And at first he did nothing, but afterwards he went into the
car, told the offenders to "stop that fooling," and then went back.
The offenders, who had only laughed at him, then resumed their
boisterous conduct, their insults, and finally their horseplay, so that
just before they reached a station they threw the hat of the plaintiff
to the floor, struck him, and when he rose to regain his hat threw him
to the floor and then walked over him out of the car to the station.
The court says:

"This was no sudden indignity, immediately followed by an escape of the
offenders, but continued conduct of profanity, abuse, and horseplay, which
began when the plaintiff entered the car, continued for some time, and cul-
minated in assault and injury. The conductor had notice at the beginning
of this misconduct, and was requested to interfere. At first he did nothing,
on the ground that if he commanded the offenders to cease they would not;
and all that he finally did was that which he said would accomplish noth-
ing. Moreover, when he did tell the offenders to stop, the answer was but
laughter, which indicated contempt or derision, and was no assurance of
decent behavior thenceforth. And thereupon the conductor washed his hands
of the affair and went away. To my mind this does not as a matter of law
acquit the defendant of its obligation to the plaintiff; and I find no proof
that warrants the conclusion that the conductor was necessarily called away
by the discharge of his official duties so that his mere perfunctory request,
which he foretold would be futile, could not as a matter of law be held the
exercise of utmost vigilance to protect the plaintiff from such flagrant abuse."

It surely cannot be said, when the conductor in the case at bar,
after being notified of the misbehavior and rioting of the offending
passengers and the probable resultant injury to other passengers there-
from, before the injuries were received by this plaintiff, that his pro-
ceeding to the rear end of the car, laughing, making no attempt to
quell the disturbance, was the exercise of the utmost vigilance to
maintain order and to guard defendant's passengers from the violence
which he could have reasonably anticipated and which might naturally
be expected from the misconduct of said offenders. In Putnam v.
Broadway & Seventh Ave. R. R., 55 N. Y., at page 113, Allen, J., says:

"There is no such privity between a railway company and a passenger as
to make it liable for the wrongful acts of the passengers upon any principle.
Pittsburgh, Ft. W. & C. R. R. v. Hinds, 53 Pa. 512, 91 Am. Dec. 224. But a
railroad company has the power of refusing to receive as a passenger or to
expel any one who is drunk, disorderly, or riotous, or so demeans himself
as to endanger the safety or interfere with the reasonable comfort and con-
venience of other passengers, and may exert all necessary power and means

to eject from the cars any one so imperiling the safety or annoying others; and this police power the conductor or other servants of the company in charge of the car or train is bound to exercise with all the means he can command whenever occasion requires. If this duty is neglected without good cause, and a passenger receives injury, which might have been reasonably anticipated or naturally expected, from one who is improperly received or permitted to continue as a passenger, the carrier is responsible. Pittsburgh, Ft. W. & C. R. R. v. Hinds, supra; Flint v. Norwich & N. Y. Transp. Co., 34 Conn. 554, Fed. Cas. No. 4,873, 6 Blatchf. 158. In the first case cited a passenger was seriously injured by a large body of drunken and riotous persons, who came upon the train in defiance of the conductor in charge; and the court in banc held that upon the evidence in that case the only question which should have been submitted to the jury was whether the conductor did all he could to quell the riot and eject the rioters, and that if he did not the company was liable. * * * In the other case the action was for an injury received by the plaintiff, a passenger on defendant's steamboat, from the falling and consequent discharge of a loaded musket by one of a great number of riotous and drunken soldiers engaged in an affray and occupying a part of the boat assigned to passengers; the plaintiff being suffered to enter the boat and pass to this part of it without any warning from the officers of the boat or others of the presence of these soldiers, and the defendant making no effort to preserve the peace or remove the offenders. Upon conflicting evidence the jury found for the plaintiff. Judge Shipman, in his charge to the jury, instructed them that 'the defendants were bound to exercise the utmost vigilance in maintaining order and in guarding passengers against violence, from whatever source arising, which might reasonably be anticipated or naturally be expected to occur in view of all the circumstances and of the number and character of the persons on board.' This, as a rule of duty and liability, is in strict analogy and consistent with the rules by which the liability of common carriers of persons for hire is determined in other cases, and seems to be well expressed and properly limited. * * * The conductor was only called upon to act upon improprieties or offenses witnessed by him or made known to him in some other way, and the defendants can only be charged for neglect of some duty arising from circumstances of which the conductor was cognizant or of which he ought in the discharge of his duties as conductor to have been cognizant."

The facts in the case at bar, as found by the jury, show that the misconduct of the offending co-passengers occurred as testified to by the plaintiff and her witnesses; that such misbehavior was actually called to the attention of the guard in charge of the car in question, seasonably and timely, and before the injuries complained of were sustained by the plaintiff. The rule cannot be better or more concisely expressed than as stated by Judge Shipman in Flint v. Norwich & N. Y. Transp. Co., supra:

"That for any neglect or omission of duty in the preservation of order and the removal of dangerous and offensive persons by the owner of a public conveyance for the transportation of passengers, or his servants or agents, the carrier is liable for any injury to other passengers which might reasonably be anticipated or naturally be expected to occur in view of all the circumstances and of the number and character of the persons on board." Thompson v. Man. Ry., 75 Hun, 548, 550, 27 N. Y. Supp. 608.

It is so firmly established in our jurisprudence as to preclude discussion that a person is answerable for the natural and probable consequences of his wrongdoing, though as a general proposition he is not liable for the damage resulting from his wrongful act when not the natural or ordinary consequences thereof, unless it be shown that he knows or has reasonable means of knowing that consequences not

usually resulting from the act are by reason of some existing cause likely to intervene so as to occasion damage to a third person. The law ordinarily looks only to the proximate cause of an injury in holding the wrongdoer liable to an action, and if the damage is not the probable consequence of a wrongful act it is not the proximate cause, so as to make the wrongdoer liable. This is the rule in cases of tort, when the conduct of the defendant cannot be considered so morally wrong or grossly negligent as to give a right to vindictive or exemplary damages. When the fact of the riotous and boisterous conduct of the offending passengers was made known to the guard, it was his duty to avoid injury to the other passengers, and toward that end he should have suppressed the disturbance or removed the offenders, summoning to his assistance proper aid, which was at his command. He would thereby have relieved the defendant of liability. His failure to do so subjected it to liability. Under the circumstances as found by the jury the defendant, to the judgment, care, and skill of which the conveyance and safety of its passengers were confided, should have discharged its duty toward them with diligence, prudence, and foresight. Passengers in public conveyances are not only persons in business pursuits, persons of vigor, but females, school children, and the aged and infirm, who require considerate care, and to allow as their fellow passengers hoodlums and ruffians, misconducting themselves, riotously and boisterously, subjecting those in their presence to indignity, shock, and insult, indulging in acts dangerous and likely to cause injury to co-passengers, permitting such objectionable persons to continue such misbehavior, after knowledge to the person in charge of the conveyance, who makes no attempt to quell the disturbance or remove the offenders, is an offense against civilization and unjustifiable, no matter how frequent may be its occurrence. The defendant was remiss in its duty to the plaintiff, and the verdict of the jury should not be disturbed.

The motion to set aside the verdict and for a new trial is denied. The defendant may have an exception to the denial of its motion. It may have 10 days' stay of execution after notice of entry of judgment, and 30 days to make and serve a case.