8333

## SPIRES v. ATLANTIC COAST LINE R. R. CO.

Railroads—Passengers.—Where a railroad company has reason to anticipate injury to any of its passengers on an excursion train from drunken and disorderly passengers taken on board and takes no precaution to protect them except the usual train crew, it is liable for injury to a passenger by stabs and shots of a fellow passenger while drunk and disorderly.

Before W. B. deLoach, Special Judge, Barnwell, October, 1911.

Two actions tried together.    1. James S. Spires against the Atlantic Coast Line Railroad Company; and 2. J. Addie Spires against same defendant.    Defendant appeals in both cases.

*Messrs. Harley & Best,* for appellant, cite: *Duty of carrier to protect passenger from injury from fellow passengers:* 93 N. Y. 127; 16 L. R. A. 630; 105 U. S. 252; 140 Mo. 683; Ray. Neg. 133-4; Webb Pollock Torts 45, 46, 47; 47 L. R. A. 123; 53 Miss. 200; 6 Cyc. 602; 5 Ency. 553; 93 Va. 44; 2 A. & E. R. R. Cas. 441; 87 Mo. 417; 32 L. R. A. 794; 67 Miss. 376; 38 L. R. A. 431; 30 S. C. 218; 77 S. C. 436; 74 S. C. 340; 81 S. C. 1; 84 S. C. 15; 78 S. C. 552.

*Messrs. Wolfe & Berry* and *R. C. Holman,* contra, cite: *Duty of carrier to protect passenger from harm or injury:* 77 S. C. 434; 71 S. C. 543; 55 S. C. 393; 84 S. C. 19; 74 S. C. 339; 5 Ency. 558, 553.

October 8, 1912.    The opinion of the Court was delivered by

Mr. Justice Woods.    On an excursion train run by the defendant from Augusta, Georgia, to Sumter, South Carolina, the plaintiff, James S. Spires, was stabbed and the

plaintiff, J. Addie Spires, was shot by Dukes, a fellow passenger. Separate actions were brought for damages against the defendant railroad company, each of the complaints alleging: "That such injuries, damages and suffering were caused by the wilfulness, wantonness, recklessness, carelessness and negligence of the defendant in the following particulars, to wit: (a) In allowing drunken, riotous and disorderly persons to enter and come upon its said train at Augusta, Georgia, well knowing their condition and the danger therefrom to the plaintiff and its other passengers thereon; (b) in allowing drunken, disorderly and riotous persons to remain upon its said train from Augusta, Georgia, to Denmark, South Carolina, well knowing their condition and the danger therefrom to the plaintiff and its other passengers thereon; (c) in failing to provide any, or a sufficient, number of officers or trainmen to preserve order and protect the plaintiff and its other passengers on its said train from violence and injury, well knowing that there were a number of drunken, riotous and disorderly persons thereon, whose manner, conduct and acts were a menace to the plaintiff and its other passengers on such train; and (d) in utterly failing to preserve order upon its said train or to protect the plaintiff and its other passengers from the insults, abuses, assaults and batteries made upon the plaintiff and certain of its other passengers thereon by a number of drunken, riotous and disorderly persons then and there upon its aforesaid train." The plaintiffs recovered separate judgments for actual damages, the claim for punitive damages having been withdrawn.

The appeal depends upon the proposition of defendant's counsel that the Circuit Judge should have ordered a nonsuit or directed a verdict for the defendant on the ground that the attacks on the plaintiffs were the sudden attacks of another passenger, which the defendant had no reason to expect, and, therefore, no reason to guard against.

The evidence from both sides showed these conditions: There was a large and turbulent crowd at the Augusta station and a number of arrests were made by the police. Just after the train crossed the Savannah River, demonstrations of drunkenness, vulgarity, and violence on the part of at least seven or eight of the passengers began, and increased until the condition of riot was reached. The train, made up of nine or ten coaches, was crowded and the train crew consisted of a conductor and assistant, a special agent of the railroad company, the engineer, fireman, and flagman. There was evidence that some of the passengers appealed to the conductor to put down the disorder and offered to assist in ejecting the rioters. The conductor and other train officers testified that an attempt to quell the disturbance and to eject the rioters by force, in their opinion, would have increased the disorder and the danger to the passengers, and that they used their utmost efforts short of the exercise of force to remove and placate the disorderly persons. There was testimony on behalf of the defendant that Dukes had not participated in the disorder up to the time he stabbed one of the plaintiffs, without provocation, and shot the other; but eyewitnesses on behalf of the plaintiff testified that he was the leader in the violent and vulgar demonstrations. The evidence is convincing that the officers in charge of the train had the strongest possible reason to apprehend assaults on passengers from riotous fellow passengers; and it was their duty after being put on notice to use every available means to prevent such assaults by having the riot quelled and the rioters ejected. There was, it is true, strong reason for them to conclude that an effort by the small train crew to enforce order would have been ineffectual and would have increased the danger. But when the riot commenced the train was very near Augusta, and it would have been easy to run the train back and summon the city police. The train passed through Barnwell and other considerable towns in this State, and yet no effort was made to perform

the obvious duty of demanding the assistance of sheriffs and other law officers in these places. Besides, it is a matter of common knowledge that disorder is to be anticipated on excursion trains such as this was, and when a railroad company chooses to run such a train for its own profit, it is its duty to provide a police force adequate to protect passengers from any disturbance which due precaution requires that it should anticipate.

The law on the subject is too well established to require discussion. It is the duty of a carrier to use the highest degree of care to protect a passenger from the attacks of a fellow passenger, when the carrier has knowledge of the existence of danger from this cause, or of facts from which the danger may be reasonably anticipated. *Franklin* v. *So. Ry.*, 74 S. C. 340, 54 S. E. 578; *Anderson* v. *S. C. & G. R. R. Co.*, 77 S. C. 434, 58 S. E. 149; *Morris* v. *So. Ry.*, 84 S. C. 15, 65 S. E. 950. The evidence shows beyond dispute that the railway company in this case had reason to anticipate injury to its passengers from any of the rioters on the train; and there was evidence from which the jury could reasonably infer that Dukes, who inflicted the injury, was conspicuous among the rioters, and that the servants of the defendant in charge of the train were negligent in not using all available means to quell the riot and protect the plaintiffs and other passengers.

It follows that there was no error in refusing to order a nonsuit or to direct a verdict in favor of the defendant.

Affirmed.