[No. 28507.   Department One.   March 7, 1942.]

ALEXANDER H. RAMBO *et al., Respondents,* v. PUGET
SOUND NAVIGATION COMPANY, *Appellant.*[1]

[1]Reported in 123 P. (2d) 355.

*Whittemore & Truscott,* for appellant.

*Chavelle & Chavelle,* for respondents.

MAIN, J.—This is a personal injury action. The defendant denied liability and pleaded two affirmative defenses, contributory negligence and assumption of risk. The cause was tried to the court and a jury, and resulted in a verdict for the defendant. The plaintiffs moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial. The motion for new trial was based on a number of different grounds. The motion for judgment notwithstanding the verdict was denied, and the motion for new trial was granted, and a general order to that effect was entered, from which the defendant appealed.

The respondents, Alexander H. Rambo and Alice Rambo, are husband and wife, and, for convenience of expression, Mrs. Rambo will be referred to as though she were the only respondent.

The appellant, the Puget Sound Navigation Company, is a corporation, and operates a ferry line between the cities of Seattle and Bremerton. The docks at Bremerton have not been changed within the last three years. At the time in question, there was a waiting room about one hundred and twenty feet square. There were five entrances to this waiting room, five ticket takers, and six exits onto the ramp leading to the ferry. On the occasion in question, four of the exits onto the ramp, each of the width of four feet, were opened. In the waiting room, there were ten double seats. The exits to the ferry were opened, one after the other. What is called Number 1 door is the first one opened onto the ramp which leads down about three hundred feet to the place where the passengers go aboard the ferry over the gangplank.

The ferry was scheduled to leave Bremerton at 5:05 p. m. On that day, it carried 1,568 passengers. When it leaves at this time, it carries the largest crowd of the day, as many workers at Bremerton return to Seattle upon it. It has a carrying capacity of about two thousand, and it may be necessary, at times, to use camp stools. There is also a lounge exclusively for ladies.

December 4, 1940, the respondent entered the waiting room approximately fifteen minutes before five o'clock, purchased her ticket as she came in, and took her place near the Number 1 door. At that time, there were thirty or forty intending passengers waiting at that exit. Other intending passengers came in from time to time, and by the leaving time of the ferry all of them were standing. The largest crowd was at the first door; the reason for this apparently being that those who passed through that door would reach the ramp first and thus proceed in front of the others down the ramp and onto the ferry.

When the Number 1 door was opened, the crowding was such that the respondent sustained an injury to her right arm, though no bones were broken. She was carried along with the crowd, and, as she says, was "catapulted out of the door." A witness, who was familiar with the conditions at the leaving time and was present on this occasion, though not at door Number 1, testified:

"Q. Will you explain the decorum of the crowd when the gates open, how they act? A. If the boat is on time the latter part of the crowd is quite orderly, but they get stirred up and they begin to get restless in the room, and then when the doors open they all try to get through at once apparently."

Another witness testified as to the demeanor of the crowd on the particular occasion here involved, as follows:

"Q. Can you describe the demeanor of the crowd? A. They were quite boisterous, and they came in with their lunch pails over their heads and put their heads down like a bunch of wild buffaloes and hollered 'Let's go' and away they went, . . . "

The respondent testified that, while she knew that there would be a large number of people taking the 5:05 p. m. ferry, she did not know that the crowd would be rough and boisterous, as she had never left Bremerton before at that particular time on the ferry. The evidence also shows that the appellant had placed no warning signs or guards in the waiting room to control the crowd, and that the conditions existing when the 5:05 ferry was leaving were well known to it.

The appellant, knowing of the large crowd that left at the time mentioned, was under the duty of taking reasonable precautions to prevent an injury to a passenger by the rushing and crowding of the persons assembled.

In 10 Am. Jur. 216, § 1348, it is said:

"A carrier of passengers that assembles people on its property for purposes of financial gain to itself assumes the responsibility of using all reasonable care to protect the individuals from injury from causes reasonably to be anticipated. If the carrier has reason to anticipate the gathering of a large crowd at a station or platform, it is bound to take such reasonable precautions as the condition to be anticipated may dictate to avert injury to a passenger by the rushing or crowding of the persons thus assembled. Accordingly, a recovery may be had against a carrier for injuries sustained by being pushed from the platform of a terminal station of an elevated railway, by reason of the size of the crowd which the carrier permitted to gather on such platform."

It follows, therefore, that the appellant did not furnish to the respondent the protection to which she was entitled.

As above stated, the motion for new trial was based upon a number of grounds, and the order granting it was general, and not specific. The rule appears to be that, where the jury returns a verdict for the defendant, and the plaintiff moves for a new trial, which motion is granted, and the defendant appeals, upon the appeal the court will not inquire further than to determine whether the evidence was sufficient to take the case to the jury.

In the case of *Morehouse v. Everett*, 136 Wash. 112, 238 Pac. 897, as in the case now before us, the jury had returned a verdict for the defendant. The plaintiff moved for a new trial, which motion was granted, and the defendant appealed. This court, after holding that the order appealed from was general, made the following observation covering the matter of the extent of the inquiry which this court will make in disposing of such a case:

"We are thus unable to determine but that the trial court awarded a new trial upon the ground of the verdict being against the weight of the evidence, as well as the specific ground mentioned in its informal ruling and opinion.

"Of course, if we could see that the verdict of the jury was, as a matter of law, the only verdict that could be rendered, as is suggested but seemingly not seriously argued, it might still be said that respondent should not have been awarded a new trial. We have reviewed the evidence with some care in this behalf, however, and are quite convinced that the case could not have been properly so disposed of by the trial court."

In the case of *Wood v. Hallenbarter, ante* p. 576, 122 P. (2d) 798, it was said:

"We have held repeatedly that this court will not take cognizance of any reasons assigned by the trial court in granting a motion for new trial unless they are incorporated in the formal order."

No authority has been called to our attention, and we know of none, that, under a situation such as the one here presented, the court should go further, after holding that the evidence was sufficient to take the case to the jury, and consider other reasons presented by the appellant why the motion for a new trial should not have been granted.

The theory of the action in the case we are now considering was not that the respondent was entitled to recover because a large crowd had assembled, and there would be more or less crowding and pushing in an endeavor to get through the gate, but is upon the theory that the crowd assembled at gate Number 1 was rough and boisterous, and that the appellant knew that that was the usual conduct of the crowd at that gate and made no effort to control the matter. While the plaintiff knew that a crowd would be assembled, she had no knowledge that it usually was rough and boisterous. From the facts above stated, and others that appear in the record, the evidence was clearly sufficient to take the case to the jury.

The order appealed from will be affirmed.

ROBINSON, C. J., MILLARD, and DRIVER, JJ., concur.

STEINERT, J., concurs in the result.