[Civ. No. 12775.   First Dist., Div. One.   June 25, 1945.]

CLYDE TERRELL, Appellant, v. KEY SYSTEM (a Corporation) et al., Respondents.

Darrell B. Edwards for Appellant.

Donahue, Richards and Hamlin for Respondents.

DOOLING, J. pro tem.—This appeal is taken from a judgment of nonsuit. Plaintiff, a Negro, received personal injuries in a fall from a moving train upon which he was a passenger. In reciting the evidence we shall be mindful of the rule, so frequently restated that any supporting citation would be superfluous, that we must consider the evidence most favorable to plaintiff, together with every favorable inference which can be reasonably drawn therefrom, without attempting to evaluate the weight to be given to conflicting or contradictory testimony.

Plaintiff boarded a train operated by defendant Key System

about 11:18 p. m. The train was one which carried workers to the Richmond shipyards. Plaintiff entered the last car, which was closest to him and in which he, with many other Negroes, was accustomed to ride. The car was crowded and plaintiff was compelled to stand. He had observed through the car windows as the train pulled in that passengers were also standing in the two preceding cars. Two crap games were in progress in the rear car when plaintiff entered it, one toward the front of the car and the other toward the back. Both white men and Negroes were gambling on the throw of the dice in the game near the front of the car. At least two of the white men in this game were drunk, boisterous, abusive and quarrelsome. They were cursing and swearing. Plaintiff stood watching the game. Several witnesses testified that a conductor was present in the car. Others testified that they did not see a conductor. In any event, no effort was made by any employee of defendant Key System to stop the game, control the boisterous and offensive conduct of the drunken participants or maintain order in any way. One of the drunken white men and a Negro player got into an argument over a bet. The white man, ascribing canine ancestry on the maternal side to the Negro, threatened "to gut" him. A nonparticipant in the game, ascribing similar ancestry to all Negroes, encouraged the drunken white man to carry out his threat, and for good measure struck a Negro with his lunch bucket. The drunken white man then drew a knife and cut or stabbed another Negro who was seated near by and not participating in any way in the game or the controversy. A general melee ensued and plaintiff withdrew to the front platform of the car. A milling, brawling crowd followed and a white man struck or pushed plaintiff, knocking him from the train.

There was evidence that over a considerable period of time crap games had been regularly engaged in by both Negroes and whites, not only in the last car of the train but in other cars as well; that fights had resulted from such games on earlier occasions in which knives had been drawn; there is no evidence that the trainmen had ever interfered in any way; and in some instances they had been seen to stake certain of the players.

■ The duty of a carrier of persons for reward is codified in Civil Code, section 2100. In general, such carriers must exercise the utmost care and diligence for the safety of their

passengers consistent with the character and mode of conveyance adopted and the practical operation of the carrier's business. (4 Cal.Jur. § 87, pp. 931-934.) While there is some diversity among the authorities in other jurisdictions as to the degree of care required of carriers for hire to protect their passengers from the assaults of fellow passengers, in a large majority of American states whose courts have passed on the question, it is held that the carrier is required to exercise the same high degree of care for that purpose as it is bound to generally. (*Spalt* v. *Eaton*, 118 N.J.L. 327 [192 A. 576]; *Falzarano* v. *Delaware L. & W. R. Co.*, 119 N.J.L. 76 [194 A. 75]; *Holton* v. *Boston Elevated Ry. Co.*, 303 Mass. 242 [21 N.E.2d 251]; *Kinsey* v. *Hudson & Manhattan R. Co.*, 130 N.J.L. 285 [32 A.2d 497]; *Koenig* v. *St. Louis Public Service Co.*, (Mo. App.) 45 S.W.2d 896; *Spires* v. *Atlantic Coast Line R. Co.*, 92 S.C. 564 [75 S.E. 950]; *Spangler* v. *St. Joseph & G. I. R. Co.*, 68 Kan. 46 [74 P. 607, 104 Am.St.Rep. 391, 63 L.R.A. 634]; *Wright* v. *Chicago, B. & Q. R. Co.*, 4 Colo.App. 102 [35 P. 196]; *Pittsburgh C. C. & St. L. Ry. Co.* v. *Richardson*, 40 Ind.App. 503 [82 N.E. 536]; *Grubb* v. *Kansas City Rys. Co.*, 207 Mo.App. 16 [230 S.W. 675]; *Hines* v. *Rice*, 142 Ark. 159 [218 S.W. 851]; *Washington Railway & E. Co.* v. *Perry*, 47 App.Cas. (D.C.) 90; *Jansen* v. *Minneapolis & St. L. Ry. Co.*, 112 Minn. 496 [128 N.W. 826, 32 L.R.A.N.S. 1206]; *Hillman* v. *Georgia R. & Banking Co.*, 126 Ga. 814 [56 S.E. 68, 8 Ann.Cas. 222]; *McMahon* v. *Interborough Rapid Transit Co.*, 59 Misc. 242 [110 N.Y.S. 876]; *Glennen* v. *Boston Elevated Ry. Co.*, 207 Mass. 497 [93 N.E. 700, 32 L.R.A.N.S. 470]; *Pittsburg & Connellsville Railroad Co.* v. *Pillow*, 76 Pa.St. 510 [18 Am.Rep. 424]; *Norfolk & W. Ry. Co.* v. *Birchfield*, 105 Va. 809 [54 S.E. 879]; *Kelly* v. *Navy Yard Route*, 77 Wash. 148 [137 P. 444]; *West Memphis Packet Co.* v. *White*, 99 Tenn. 256 [41 S.W. 583, 38 L.R.A. 427]; *Blackwell* v. *Fernandez*, 324 Ill.App. 597 [59 N.E.2d 342]; *Adams* v. *Chicago Great Western R. Co.*, 156 Iowa 31 [135 N.W. 21, 42 L.R.A.N.S. 373]; 10 Am.Jur. 266; 3 Michie on Carriers, § 2553, p. 2016.) This court applied the rule of utmost care in connection with the transportation of a dog in a passenger coach, holding that while the carrier was entitled to permit the transportation of a dog in charge of a passenger it was bound to use the utmost care to prevent the dog from injuring

other passengers. (*Westwater* v. *Southern Pacific Co.*, 38 Cal. App.2d 369 [101 P.2d 154].) Neither *Hicks* v. *Scott*, 48 Cal.App.2d 481 [120 P.2d 107], nor *Schwerin* v. *H. C. Capwell Co.*, 140 Cal.App. 1 [34 P.2d 1050], is clear upon the subject of the degree of care owed to a passenger by a carrier for hire to protect him against a fellow passenger's misconduct. We can see no reason not to apply the rule of Civil Code, section 2100 that "A carrier of persons for reward must use the utmost care and diligence for their safe carriage" to the recognized duty of a carrier to protect a passenger from assaults by fellow passengers.

■ This duty can only arise if in the exercise of the required degree of care the carrier has or should have knowledge of conditions from which it may reasonably be apprehended that an assault on a passenger may occur (3 Michie on Carriers, §§ 2555-2556, pp. 2020-2022, § 2564, pp. 2027-2028; 10 Am.Jur. 267; *Hicks* v. *Scott, supra; Schwerin* v. *H. C. Capwell Co., supra*), and has the ability in the exercise of that degree of care to prevent the injury (3 Michie on Carriers, § 2565, pp. 2032-2033; 10 Am.Jur. 268, 270).

■ On the question of notice or knowledge of the danger of assault upon one or more passengers from Negroes and whites engaging in the particular crap game there is the testimony that on previous occasions when craps were played tempers had flared and knives had been drawn and the additional factor that in this particular game some of the white men were drunk, boisterous, abusive and quarrelsome. It was for the jury to say whether the carrier, with knowledge of these facts, in the exercise of the utmost diligence required of it should have foreseen the danger of assault upon other passengers. A few examples from other decisions will serve to make this clear.

In *Stockwell* v. *Board of Trustees*, 64 Cal.App.2d 197 [148 P.2d 405], this court held that it was a question of fact for the jury whether the trustees of a university, with knowledge that trespassers were in the habit of firing guns on its grounds, in the exercise of ordinary care should have taken steps for the safety of its invitees.

In *Neering* v. *Illinois Cent. R. R. Co.*, 383 Ill. 366 [50 N.E. 2d 497], the Supreme Court of Illinois held it actionable negligence for a railroad company, with knowledge that vagrants

were in the habit of congregating about a station, to fail to furnish protection against assaults by such vagrants upon arriving or departing passengers.

In *Exton* v. *Central Railroad Co.*, 62 N.J.L. 7 [42 A. 486, 56 L.R.A. 508], the custom of cabmen crowding and jostling at the defendant's station in the solicitation of fares from departing passengers of defendant was held sufficient to put defendant on notice of the danger to its passengers of being knocked down and injured by such cabmen.

In *Spires* v. *Atlantic Coast Line R. Co.*, *supra*, 92 S.C. 564 [75 S.E. 950], the court decided that knowledge of disorderly conduct by unruly passengers on previous excursions run by defendant railroad put it on notice of the danger of assaults upon passengers being committed on a particular excursion train.

*Anderson* v. *South Carolina & G. R. Co.*, 81 S.C. 1 [61 S.E. 1096], and *Rambo* v. *Puget Sound Nav. Co.*, 12 Wn.2d 637 [123 P.2d 355], announce the rule that where a carrier knows that large crowds are accustomed to take passage at certain hours and to crowd and jostle to gain admittance to the carrier's train or vessel they are put on notice of the danger of injury to intending passengers from the conduct of such crowds.

Respondent insists, however, that conceding that it may have been put on notice of the possible danger of unruly conduct arising from this crap game endangering the safety of its passengers, its ability to protect the plaintiff from such danger was not proved. In this, respondent takes too narrow a view of the evidence. Its argument is, in effect, that the single conductor present in the car, as testified to by some of the witnesses, could have had no notice of impending danger to plaintiff until the quarrel suddenly flared up and then it was impossible for one man to do anything successfully to control a fight engaged in by so many passengers so quickly. The argument overlooks the testimony of previous quarrels arising from earlier crap games in which knives were drawn. Had this particular crap game been an isolated instance of gambling with no showing of previous disorderly conduct arising from other similar games, the rule of *Tall* v. *Baltimore Steam-Packet Co.*, 90 Md. 248 [44 A. 1007, 47 L.R.A. 120], relied on by respondent, might apply. The holding in that

case was that the mere fact that a carrier permits passengers to gamble does not make the carrier liable for the shooting of one passenger by another in a quarrel over the game. But in our case the carrier had the warning of previous experience that such games had actually led to quarrels and even to threats of assault with a deadly weapon. In the face of those previous experiences of disorders arising from similar games, it was clearly a jury question whether the carrier should have taken some steps either to suppress the games or to protect its passengers from their consequences. Indeed we are satisfied that on the evidence in this case it was a jury question whether the conductor, with notice of the boisterous and vituperative conduct of the drunken crap shooters engaged in the particular game, should not have taken some steps to maintain or restore order before tempers got so far out of control that he was powerless to prevent the injury which occurred to plaintiff. Nor can respondent's argument that the evidence is not clear that any conductor was present in the rear coach on that evening avail it to support the judgment of nonsuit. Whether or not the conductor was present would be, at most, a jury question to be resolved from conflicting testimony, and if the jury determined that no conductor was in the car it might find that the failure to have any employee in the coach was itself negligence in view of the carrier's notice of disorderly and violent conduct on other occasions.

The argument that the negligence, if any, of the carrier could not be the proximate cause of plaintiff's injuries because they were the result of an intervening tort is well answered by the Supreme Court of Illinois in *Neering* v. *Illinois Cent. R. R. Co., supra,* 50 N.E.2d at pp. 503-504:

"Defendant further contends that even though it had been guilty of negligence on the occasion in question, the criminal act of the colored man was an intervening cause and defendant's negligence was not the proximate cause of plaintiff's injury and that the abnormal criminal act of the third person broke the chain of causation. It cannot be denied that if the negligence of the defendant only furnishes a condition and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of an injury. However, the rule is that the subsequent independent act, in order to break the causal connection, must be one, the intervention of which was not

probable or foreseeable by the first wrongdoer. What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. . . . The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable.''

The point need not be further elaborated. This rule of proximate cause is implicit in every decision holding a carrier liable for negligently permitting one passenger to assault another. We content ourselves with the citation of *Katz* v. *Helbing,* 215 Cal. 449 [10 P.2d 1001]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872]; Restatement, Torts, section 449.

■ The question of plaintiff's contributory negligence was likewise one for the jury. ■ A passenger is bound to take only ordinary care for his own safety. The plaintiff was entitled under his contract of carriage to be where he was and to be protected from the unprovoked assaults of his fellow passengers by the carrier's exercise of the high degree of care required of it to carry him safely. ■ It is not shown that any other passenger left the coach or the proximity of the crap game before it degenerated into an affray. When it did so plaintiff fled to the platform for safety. He could not proceed further because of the crowd at the door of the next carriage. There is no evidence that plaintiff had any knowledge of the earlier quarrels that had arisen from other crap games. Whether he exercised ordinary care for his own protection was a question that should have been left for the jury to decide. (*Cf. Hines* v. *Rice, supra,* 218 S.W. 851; *Wachser* v. *Interborough Rapid Transit Co.,* 69 Misc. 346 [125 N.Y.S. 767].)

■ A plaintiff can only be held guilty of contributory negligence as a matter of law where there is no room for reasonable minds to differ and the conclusion that he was guilty of negligence is the only one that can rationally be drawn

from the evidence. (19 Cal.Jur. 735-738; *Dwelly* v. *McReynolds*, 6 Cal.2d 128, 133 [56 P.2d 1232]; *McDougall* v. *Morrison*, 55 Cal.App.2d 92, 96 [130 P.2d 149].)

Judgment reversed.

Peters, P. J., and Ward, J., concurred.